**2014-1194**

**IN THE**
**UNITED STATES COURT OF APPEALS**
**FOR THE FEDERAL CIRCUIT**

VERSATA DEVELOPMENT GROUP, INC.,
*Appellant*,

v.

SAP AMERICA, INC. and SAP AG,
*Appellees*,

and

UNDER SECRETARY OF COMMERCE FOR INTELLECTUAL PROPERTY
and DIRECTOR OF THE UNITED STATES PATENT AND TRADEMARK
OFFICE,
*Intervenor.*

Appeal from the United States Patent and Trademark Office, Patent Trial and
Appeal Board in No. CBM2012-00001.

**REPLY BRIEF OF APPELLANT**
**VERSATA DEVELOPMENT GROUP, INC.**

Mike McKool, Jr.
*Principal Counsel*
Daniel L. Geyser
McKOOL SMITH, P.C.
300 Crescent Court, Suite 1500
Dallas, TX 75201
(214) 978-4000

Scott L. Cole
Joel L. Thollander
Steven J. Pollinger
McKOOL SMITH, P.C.
300 W. 6th Street, Suite 1700
Austin, Texas 78701
(512) 692-8700
 *Attorneys for Appellant*
 *Versata Development Group, Inc.*

(Additional counsel listed inside cover)

May 19, 2014

Nancy J. Linck
Martin M. Zoltick
ROTHWELL FIGG ERNST &
MANBECK PC
607 14th Street, NW, Suite 800
Washington, DC 20005
(202) 783-6040

*Attorneys for Appellant*
*Versata Development Group, Inc.*

# TABLE OF CONTENTS

I.   ARGUMENT IN REPLY ............................................................1

   A.   The PTAB Lacked Authority to Issue Its Final Written
        Decision. ..........................................................................1

        1.   These jurisdictional issues are appealable and
             preserved. ..............................................................1

        2.   The PTAB lacked authority because the petition
             was estopped by claim preclusion. ............................5

        3.   The PTAB lacked authority because Versata's
             '350 patent does not capture a "covered business
             method." .............................................................10

        4.   The PTAB lacked authority because SAP's § 101
             challenge falls outside the scope of CBM review. ..................13

   B.   The PTAB Erred in Holding the Challenged Claims
        Patent Ineligible Under § 101 ............................................15

        1.   No substantial evidence supports the PTAB's
             holding. .................................................................16

        2.   The PTAB failed to analyze the claims as a
             whole. ....................................................................17

        3.   The claims are directed to a specific application
             of computer software, not an abstract idea. .............18

        4.   The claims do not preempt any abstract idea............23

        5.   The PTAB wrongly shifted the burden of proof
             to Versata. ...........................................................24

   C.   Alternatively, the Court Should Remand for the PTAB
        To Reapply § 101 Using a Proper Claim Construction. ....................25

II.  CONCLUSION.............................................................................28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Abbott Diabetes Care, Inc.*,
  696 F.3d 1142 (Fed. Cir. 2012) ...........................................................................27

*Accenture Global Servs., GmbH v. Guidewire Software, Inc.*,
  728 F.3d 1336 (Fed. Cir. 2013) ...........................................................................24

*In re Alappat*,
  33 F.3d 1526 (Fed. Cir. 1994) ......................................................................3, 20

*Arizona v. California*,
  530 U.S. 392 (2000) ........................................................................................3

*Bancorp Serv. LLC v. Sun Life Assurance Co. of Canada*,
  687 F. 3d 1266 (Fed. Cir. 2012) ...................................................................22, 25

*In re Baxter*,
  678 F.3d 1357 (Fed. Cir. 2012) .....................................................................8, 25

*Bilski v. Kappos*,
  130 S. Ct. 3218 (2010) ................................................................................20, 23

*Bowen v. Mich. Academy of Family Physicians*,
  476 U.S. 667 (1986) .........................................................................................1

*City of Arlington v. FCC*,
  133 S. Ct. 1863 (2013) ....................................................................................12

*Diamond v. Diehr*,
  450 U.S. 175 (1981) ...................................................................................18, 24

*Dias v. Elique*,
  436 F.3d 1125 (9th Cir. 2006) ............................................................................8

*Ethicon v. Quigg*,
  849 F.2d 1422 (Fed. Cir. 1988) ..........................................................................8

*In re Etter*,
  756 F.2d 852 (Fed. Cir. 1985) ............................................................................8

*Foster v. Hallco Mfg. Co.,*
 947 F.2d 469 (Fed. Cir. 1991) ....................................................8, 9, 10

*In re Freeman,*
 30 F.3d 1459 (Fed. Cir. 1994) ................................................................26

*Ga. Pac. Consumer Prods., LP v. Von Drehle Corp.,*
 710 F.3d 527 (4th Cir. 2013) ....................................................................3

*Genetics Inst., LLC v. Novartis Vaccines & Diagnostics, Inc.,*
 655 F.3d 1291 (Fed. Cir.2011) ...............................................................19

*Gottschalk v. Benson,*
 409 U.S. 63 (1972)............................................................................22, 23

*In re Hiniker Co.,*
 150 F.3d 1362 (Fed. Cir. 1998) ..........................................................2, 28

*INS v. Ventura,*
 537 U.S. 12 (2002).................................................................................27

*In re Kotzab,*
 217 1365, 1370 (Fed. Cir. 2000)............................................................17

*Jang v. Bos. Scientific Corp.,*
 532 F.3d 1330 (Fed. Cir. 2008) ........................................................27, 28

*Lingamfelter v. Kappos,*
 513 F. App'x 934 (Fed. Cir. 2012) ...........................................................3

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.,*
 132 S. Ct. 1289 (2012).......................................................................18, 23

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto Ins.,*
 463 U.S. 29 (1983)............................................................................10, 25

*Nasalok Coating Corp. v. Nylok Corp.,*
 522 F.3d 1320 (Fed. Cir. 2008) .............................................5, 7, 9, 10

*Nat'l Org. of Veterans' Advocates, Inc. v. Sec'y of Veterans Affairs,*
 260 F.3d 1365 (Fed. Cir. 2001) ........................................................26, 27

*O'Reilly v. Morse*,
    56 U.S. 62 (1853)..............................................................................21

*O'Shea v. Amoco Oil*,
    886 F.2d 584 (3d Cir. 1989) ...............................................................8

*Parker v. Flook*,
    437 U.S. 584 (1978)......................................................................22, 23

*In re Recreative Techs. Corp.*,
    83 F.3d 1394 (Fed. Cir. 1996) ........................................................2, 3

*Research Corp. Techs. v. Microsoft Corp.*,
    627 F.3d 859 (Fed. Cir. 2010) ..............................................19, 20, 22

*SEC v. Chenery*,
    318 U.S. 80 (1943)...........................................................................6, 7

*Senju Pharm. Co. v. Apotex Inc.*, No. 13-1027,
    2014 U.S. App. LEXIS 5877 (Fed. Cir. Mar. 31, 2014) ...................10

*SiRF Tech., Inc. v. Int'l Trade Com'n*,
    601 F.3d 1319 (Fed. Cir. 2010) ....................................................19, 22

*Standard Oil Co. v. Am. Cyanamid Co.*,
    774 F.2d 448 (Fed. Cir. 1985) .........................................................14

*In re Swanson*,
    540 F.3d 1368 (Fed. Cir. 2008) ..........................................................8

*United States v. Texas*,
    507 U.S. 529 (1993)............................................................................7

*Versata Software, Inc. v. SAP Am., Inc.*,
    717 F.3d 1255 (Fed. Cir. 2013) ...........................................12, 13, 19

*Woodford v. Ngo*,
    548 U.S. 81 (2006)..............................................................................4

**Statutes**

5 U.S.C. § 704 ......................................................................................1

5 U.S.C. § 706 ...............................................................................10, 16

35 U.S.C. § 100(b) ...................................................................................20

35 U.S.C. § 282(b) .................................................................13, 14, 15

35 U.S.C. § 317(b) .....................................................................................7

35 U.S.C. § 321(b) ...................................................................................13

35 U.S.C. § 324 ......................................................................................2, 3

35 U.S.C. § 325(a) .....................................................................................7

35 U.S.C. § 329 ......................................................................................1, 2

## Other Authorities

37 C.F.R. § 42.71(d) ..................................................................................4

37 C.F.R. § 42.301(b) ..............................................................................13

37 C.F.R. § 42.302 ...............................................................................6, 7, 9

18 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper,
FEDERAL PRACTICE & PROCEDURE § 4422 (2d ed. 2002) ...................................7

157 CONG. REC. S1363-64 (daily ed. Mar. 8, 2011) ................................6

77 FED. REG. 48734.................................................................................12

http://dictionary.reference.com/browse/abstract?s=t ..............................18

https://ptabtrials.uspto.gov/...................................................................11

RESTATEMENT (2D) JUDGMENTS § 22(2) ..................................................6

v

# TABLE OF ABBREVIATIONS

## *Parties*

| | |
|---|---|
| Versata | Appellant Versata Development Group, Inc. |
| SAP | Appellees SAP America, Inc. & SAP AG |
| PTO | United States Patent and Trademark Office & Intervenor Under Secretary of Commerce for Intellectual Property and Director of the United States Patent and Trademark Office |

## *Cites*

| | |
|---|---|
| JA__ | Joint Appendix at page(s) __ |
| PTO.Br.__ | PTO's opening brief at page(s) __ |
| SAP.Br.__ | SAP's opening brief at page(s) __ |
| V.Br.__ | Versata's opening brief at page(s) __ |
| V(1145).Br.__ | Versata's opening brief in the companion appeal (No. 14-1145) at page(s) __ |

## *Terms*

| | |
|---|---|
| '350 patent | U.S. Patent No. 6,553,350 |
| AIA | Leahy-Smith America Invents Act |
| APA | Administrative Procedure Act |
| BRI | Broadest Reasonable Interpretation |
| CBM | Covered Business Method |
| PTAB | Patent Trial and Appeal Board |

# I.  ARGUMENT IN REPLY

A.    **The PTAB Lacked Authority to Issue Its Final Written Decision.**

1.    **These jurisdictional issues are appealable and preserved.**

The PTAB exceeded its authority in issuing a final written decision, and Versata has now refuted the efforts by PTO and SAP to insulate the agency's assertion of authority from judicial review. V(1145).Br.1-18. As explained in detail in the companion appeal, PTO cannot set aside the preconditions to CBM review, assert authority that Congress never intended to give it, and declare these issues unreviewable at any point, ever, even once the matter is final on direct review. Versata's challenges are preserved and subject to review:

a. There is a "strong presumption that Congress intends judicial review of administrative action," and in particular it has "never been the policy of Congress to prevent the administration of its own statutes from being judicially confined to the[ir proper] scope." *Bowen v. Mich. Academy of Family Physicians*, 476 U.S. 667, 670-71 (1986). That presumption stands unrebutted. V(1145).Br.3-4.

b. PTO's jurisdiction-stripping theory is irreconcilable with § 329, which authorizes a full appeal for any "party dissatisfied with the [PTAB's] final written decision." 35 U.S.C. § 329. And a party may be "dissatisfied," as PTO itself has explained, because "the PTAB lacked the authority to issue a written determination." JA40792. The APA further confirms that intermediate, otherwise nonappealable decisions are reviewable on appeal from the final decision, 5 U.S.C.

1

§ 704, and that this Court is required in such an appeal to "review the whole record" and "set aside" the agency action if it is "in excess of statutory jurisdiction [or] authority," *id.* § 706(2)(C).

Versata's approach to § 329 tracks the Court's approach to § 306—where appeals from reexamination *patentability* decisions include review of the "limited circumstances" *permitting* reexamination. *In re Hiniker Co.*, 150 F.3d 1362, 1367 (Fed. Cir. 1998); *In re Recreative Techs. Corp.*, 83 F.3d 1394, 1397 (Fed. Cir. 1996). Versata's approach is also consistent with the view forcefully articulated by PTO to the district court in the companion appeal. JA40792; V(1145).Br.5-9.

c. Nothing in § 324(e) insulates the PTAB's assertion of authority from § 329 review. That section's plain language makes "nonappealable" only the *discretionary* determination "*whether* to institute" made "under *this section.*" 35 U.S.C. § 324(e) (emphases added). The discretionary determinations made "under this section" are found at § 324(a) and (b); these require an initial assessment that the petition is either likely to succeed or raises issues that are important to other patents or applications. Congress made such initial assessments "nonappealable" because they are "washed clean" by the ultimate determination on patentability. *Hiniker*, 150 F.3d at 1367. The same is not true of the limitations on PTAB authority found elsewhere in the AIA, and they are excluded by § 324(e)'s plain language—which further distinguishes, for example, determinations made under

2

other provisions of "this chapter" from those made "under this section." 35 U.S.C. § 324(c), (e). This plain-language reading is further confirmed by the history and development of § 324(e), detailed in the companion appeal. V(1145).Br.14-16.

d. As previously established, Versata's authority-related challenges are also preserved.[1] V.Br.35-39.

SAP cites three cases for the proposition that Versata did not raise its challenges "timely." SAP.Br.32. But the challenges in those cases would have been preserved had they been raised—like Versata's—in the initial pleadings. *See Arizona v. California*, 530 U.S. 392, 410 (2000); *Ga. Pac. Consumer Prods., LP v. Von Drehle Corp.*, 710 F.3d 527, 533 (4th Cir. 2013); *Lingamfelter v. Kappos*, 513 F. App'x 934, 937-38 (Fed. Cir. 2012); JA2207-77.

PTO suggests that, during a merits-stage page-limit teleconference, a "Board judge specifically warned Versata" that failing to failing to reassert its *institution* arguments "could lead to an inference of waiver." PTO.Br.29-30. But there was no warning: the call occurred three days *after* Versata's rule-compliant response had been filed. JA1233; JA2461. Neither was there any inference of waiver. Four

---

[1] It is not clear that Versata's *ultra-vires* challenges are even subject to waiver. *See In re Alappat*, 33 F.3d 1526, 1581 (Fed. Cir. 1994) (Plager, J., concurring) ("A government act that is *ultra vires* is void, which means the defect in the appeal is not waived simply because the parties failed to raise it."); *Recreative*, 83 F.3d at 1398 ("To the extent that [PTO action] enlarges the statutory authorization, it is void.").

3

months after the teleconference, PTO assured a district court that Versata "can obtain Article III review of the [PTAB's] threshold decision that it was authorized to engage" in CBM review through this "direct appeal to the Federal Circuit."[2] JA41556. SAP also implies that the call resulted in "fewer pages" for its reply. SAP.Br.33. To the contrary, SAP's allotment was *expanded* from 15 to 25 pages. JA1246-47. And there was no prejudice: SAP had no reason to brief questions irrelevant to the merits and already decided in its favor.

SAP and PTO further cite to administrative-remedy cases holding that "exhaustion demands compliance with an agency's deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006); PTO.Br.30-31; SAP.Br.33-34. But Versata complied with every deadline and procedural rule, V.Br.35-37, and neither SAP nor PTO identifies any agency rule establishing waiver in these circumstances, PTO.Br.30-31; SAP.Br.33-34. Interestingly, in the wake of this dispute the PTAB *now* includes in its scheduling orders a notation that "[t]he patent owner is cautioned that any argument for patentability not raised in the response will be deemed waived." *Dell Inc. v. Disposition Servs. LLC*,

---

[2] SAP's assertions that Versata "expressly" or "deliberately" waived its challenges for some "tactical" reason, SAP.Br.15, 31, 32.n.10, are disingenuous. SAP was well aware that Versata was preserving its challenges, V.Br.38, and SAP identifies no "tactical" advantage Versata might have obtained through waiver. SAP also wrongly suggests that Versata filed no request for rehearing. SAP.Br.31. While such a request is not required to preserve an issue for review, 37 C.F.R. § 42.71(d), Versata filed one anyway, *id.* § 42.71(d)(2); JA2781-803.

CBM2013-00040, Paper No. 8 at 3 (Feb. 5, 2014). That language was not in the scheduling order in this case. JA2302. But even this new notation does not indicate that arguments relating to the PTAB's *authority*, rather than *patentability*, would (or could) be deemed waived. V.Br.35-37. If the PTAB wants patent owners to relitigate challenges to its authority at the merits stage, it should say so—not retroactively announce (in the first-ever CBM review) that a patent owner waived those challenges by filing a response that complies with PTAB rules.

Finally, PTO *concedes* that, because the definition of "covered business method" is "relevant only to the decision to institute the review … there would be no issue of waiver in this Court, were the institution decision not 'nonappealable.'" PTO.Br.24n.5. As shown above, challenges relating to the PTAB's authority to institute are "not 'nonappealable.'" There is therefore "no issue of waiver in this Court" for any of these challenges. V.Br.35-37.

2. **The PTAB lacked authority because the petition was estopped by claim preclusion.**

SAP cannot dispute that it brought this proceeding to impair the rights established in the Texas district court's final judgment. JA40004-05. But this Court has "recognized that the doctrine of claim preclusion bars a collateral attack on an earlier judgment." *Nasalok Coating Corp. v. Nylok Corp.*, 522 F.3d 1320, 1328 (Fed. Cir. 2008). Even where, as here, the assault is brought via an administrative proceeding before PTO, "[s]uch a collateral attack is barred by claim preclusion."

*Id.* at 1330; *see also* RESTATEMENT (2D) JUDGMENTS § 22(2); V.Br.18-22. Neither PTO nor SAP provides any reason to doubt the impact of this rule, which barred SAP's petition.[3] 37 C.F.R. § 42.302(b). PTO and SAP nevertheless offer three sets of opposing arguments—all meritless.

First, PTO and SAP suggest that general preclusion principles should not apply in the CBM context. PTO.Br.34-37; SAP.Br.35-36. But the PTAB held the opposite: it merely found (incorrectly) that Versata's judgment was insufficiently "final" to trigger claim preclusion. JA18-19. That leaves PTO and SAP with a critical problem: "an administrative order cannot be upheld" on grounds the agency did not invoke. *SEC v. Chenery*, 318 U.S. 80, 95 (1943). The failure to defend the invoked grounds, at a minimum, makes remand necessary. *Id.* PTO and SAP are also wrong: CBM review was designed as "a cost-efficient alternative" to be "used instead of, rather than in addition to, civil litigation." 157 CONG. REC. S1363-64 (daily ed. Mar. 8, 2011) (Statement of Sen. Schumer). Nothing suggests that Congress licensed administrative attacks on final district-court judgments—which would put Article I on an ill-advised collision course with Article III. V.Br.22.

The PTAB recognized as much, holding that the "estoppel" referenced in 37 C.F.R. § 42.302 "may arise from claim preclusion." JA19. PTO's attack on that

---

[3] SAP asserts that Versata cited no case in which a judgment of "*no invalidity* ha[d] a preclusive effect on a PTO proceeding." SAP.Br.37. Not true: Versata twice cited *Nasalok* in its opening brief. V.Br.18, 21.

holding, PTO.Br.34n.11, is barred by *Chenery*, 318 U.S. at 95. And whether or not § 42.302 encompasses traditional preclusion principles is ultimately irrelevant: "In order to abrogate a common-law principle, the statute must 'speak directly' to the question addressed by the common law." *United States v. Texas*, 507 U.S. 529, 534 (1993). Again, nothing in the AIA expressly abrogates or changes the common-law preclusion principles that protect entered judgments from collateral administrative attack.[4] These background principles thus apply, and barred this proceeding. *Nasalok*, 522 F.3d at 1328-30.

Second, PTO and SAP suggest that decisions addressing *issue* preclusion in the reexamination context control the application of *claim* preclusion in AIA administrative trials. PTO.Br.34-36; SAP.Br.37-39. Again, not true. The reexamination cases follow the traditional rule that *issue* preclusion "may be defeated by shifts in the burden of persuasion." 18 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, FEDERAL PRACTICE & PROCEDURE § 4422 (2d ed.

---

[4] The fact that the AIA prevents a CBM petitioner from taking particular actions inconsistent with the CBM proceeding in district court, 35 U.S.C. § 325(a)(1); AIA § 18(a)(1)(D), does not suggest that Congress authorized collateral attacks on a district court's earlier judgment. SAP.Br.36; PTO.Br.37. Both PTO and SAP also point to former 35 U.S.C. § 317(b): SAP argues that this provision modified certain background claim preclusion principles for purposes of reexamination, SAP.Br.35-36, and PTO notes that this provision was not carried through to the AIA, PTO.Br.38-39. These arguments merely demonstrate that Congress has not modified the application of background claim preclusion principles for purposes of the AIA. *Texas*, 507 U.S. at 534.

2002). That rule does not apply to *claim* preclusion. *Id.* § 4422 n.1; *O'Shea v. Amoco Oil*, 886 F.2d 584, 594 (3d Cir. 1989) ("applying claim preclusion when there are varying burdens of proof does not raise any problem analogous to the problem of applying issue preclusion"); *Dias v. Elique*, 436 F.3d 1125, 1129 (9th Cir. 2006). The fact that civil and administrative proceedings involve different standards that might justify different outcomes is significant for *issue* preclusion, PTO.Br.34-35, but not for the *claim* preclusion analysis necessary here.[5]

Third, PTO and SAP suggest that, under *Foster v. Hallco Mfg. Co.*, 947 F.2d 469 (Fed. Cir. 1991), it "is far from clear that an invalidity defense can be a 'claim' for preclusion purposes in this context." PTO.Br.36-37; SAP.Br.39-41. But *Foster* confirms that claim preclusion barred this proceeding.

*Foster* makes clear that "defenses that were raised or *could have been* raised by the defendant in that action are extinguished" with the judgment. 947 F.2d at 478. It explains that a prior judgment precludes the losing party from asserting an invalidity defense in a later proceeding (either in response to an infringement claim or preemptively) where both proceedings involve the same underlying

---

[5] PTO and SAP cite the reexamination-related cases *In re Baxter*, 678 F.3d 1357 (Fed. Cir. 2012), *In re Etter*, 756 F.2d 852 (Fed. Cir. 1985), *In re Swanson*, 540 F.3d 1368 (Fed. Cir. 2008), and *Ethicon v. Quigg*, 849 F.2d 1422 (Fed. Cir. 1988). None of these cases addresses *claim* preclusion. PTO.Br.35. SAP's similar argument that the Court should "consider finality in the context of collateral estoppel" (or *issue* preclusion), SAP.Br.42, stands as a concession that finality in the context of *claim* preclusion forecloses its petition. V.Br.19-21.

infringement allegations. *Id.* at 479. They plainly do here. The AIA's CBM provisions (like the Declaratory Judgment Act in *Foster*, *id.*) require that the petitioner be sued for or charged with infringement of the challenged patent. AIA § 18(a)(1)(B); 37 C.F.R. § 42.302(a). And here SAP relies upon the Texas district court judgment to establish its standing and the PTAB's jurisdiction under AIA § 18(a)(1)(B). JA2016; JA18. The petition is thus precluded under *Foster*.

In addition to the *Foster* preclusion analysis, this Court recognizes an independent "second basis for applying claim preclusion against defendants— where the effect of the later action is to collaterally attack the judgment of the first action." *Nasalok*, 522 F.3d at 1328. The Court in *Nasalok* referred to this species of claim preclusion as "defendant preclusion," *id.* at 1330, and there can be no doubt that it applies here, JA40004; JA20.

SAP suggests that Versata "sidestep[ped]" the "same claim" issue, SAP.Br.37, but there was never any dispute over the perfect identity of claims in these proceedings, JA2016—and the PTAB raised no concerns with this element. JA19-20. Critically, it is now SAP and PTO who "sidestep" the PTAB's analysis: *no one* defends the PTAB's "not-final-because-currently-on-appeal" holding as a proper application of claim preclusion principles. V.Br.18-21. But "an agency's action must be upheld, if at all, on the basis articulated by the agency itself," and this Court "may not accept appellate counsel's *post hoc* rationalizations for agency

action." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto Ins.*, 463 U.S. 29, 50 (1983). In this case neither the PTAB's articulated basis nor appellate counsel's *post hoc* rationalizations provide any justification for permitting this collateral attack on an entered Article III judgment.

"At its core, what [SAP] seeks is a do-over. Having lost its suit, [SAP] seeks to use [CBM review] to obtain a second bite at the apple" with an administrative proceeding involving the same parties, the same patent, the same claims, and justified by the same assertions of infringement—all for the purpose of collaterally attacking the entered judgment. *See Senju Pharm. Co. v. Apotex Inc.*, No. 13-1027, 2014 U.S. App. LEXIS 5877, at *22 (Fed. Cir. Mar. 31, 2014). "But that is exactly what claim preclusion was designed to prevent." *Id.*; *Foster*, 947 F.2d at 476-79; *Nasalok*, 522 F.3d at 1328. Claim preclusion barred this petition, and the PTAB therefore lacked authority to issue its final written decision.

### 3. The PTAB lacked authority because Versata's '350 patent does not capture a "covered business method."

a. The CBM statute only permits review of patents "used in the practice, administration, or management of a financial product or service." AIA § 18(d)(1). Under this plain statutory language, this CBM review was unauthorized absent proof that the challenged patent claims are for use with some particular "financial product or service." *Id.*; 5 U.S.C. § 706(2)(C). But there is no such proof—neither PTO nor SAP identify any financial product or financial service that these claims

are used to practice, administer, or manage. PTO.Br.25-27; SAP.Br.45-47. That is because the PTAB read this requirement out of the statute. JA23.

"[F]inancial products or services" are necessarily a subset of all "products or services." But instead of distinguishing the genus from the species, PTO "broadly interpreted" the provision to include not only patents relating to "financial products or services" but also patents otherwise "financial in nature, incidental to a financial activity or complementary to a financial activity."[6] JA21-22. And the PTAB further expanded the statute's reach to cover any patent "relating to monetary matters." JA23. Unsurprisingly, the PTAB found that the challenged patent satisfied this atextual and far more lenient requirement.[7] V.Br.23-27.

The PTAB wrongly focused on the word "financial" in isolation. A simple illustration shows why. Suppose Congress gave PTO special jurisdiction over patents relating to "machine guns." Using a similar approach, the PTAB might

---

[6] SAP describes "PTO's Patent Class 705" as the "template" for the scope of "covered business method" patents and posits that any patent in Class 705 is automatically covered. SAP.Br.45. SAP is wrong. If Congress wanted to include all Class-705 patents in the program, it would have been easy to say that. In any event, that class distinguishes "cost/price" processing—like the '350 patent—from "financial" processing. SAP.Br.10. To the extent Class 705 is relevant to the analysis, it supports Versata's view that the '350 patent falls outside the statutory scope of "financial products and services."

[7] PTO's definition is broad in theory *and* practice. Of the 78 patents now challenged as "covered business method" patents, *PTO has not found a single one* to fall outside the purview of "monetary matters." Information available at: https://ptabtrials.uspto.gov/.

isolate the word "machine," note that it means "mechanical apparatus," and conclude that it had jurisdiction over any patent relating to a gun involving a "mechanical apparatus." Since all guns involve a mechanical apparatus, PTO would grant itself jurisdiction over all gun-related patents, even though the statute limited agency jurisdiction to patents concerning "machine guns."

PTO argues that the PTAB's evisceration of the AIA's "financial product or service" requirement is subject to an "arbitrary or capricious" standard of review. PTO.Br.25. PTO is wrong: Congress defined "covered business method," AIA § 18(d)(1), and the PTAB has no discretion to depart from that definition, *City of Arlington v. FCC*, 133 S. Ct. 1863, 1868 (2013). While Congress instructed PTO to define "technological invention," it did not authorize PTO to rewrite the statutory definition of "covered business method." AIA § 18(d)(1)-(2); 77 FED. REG. 48734. In any event, transforming the required "financial product or service" into anything "relating to monetary matters," JA23, was arbitrary and capricious.

b. The PTAB also misapplied the "technological invention" exception. JA24-28. This Court's opinion in the first *Versata* appeal confirms that the '350 patent covers an actual software invention ("Pricer"), and further that the claimed subject matter as a whole recites a technological feature (a "hierarchical pricing engine") that was novel and unobvious over the prior art (the engine "received praise as a 'breakthrough' that was 'very innovative'"). *Versata Software, Inc. v.*

*SAP Am., Inc.*, 717 F.3d 1255, 1259 (Fed. Cir. 2013); 37 C.F.R. § 42.301(b); V.Br.28-29. Sweeping past these controlling points, PTO and SAP highlight the PTAB's conclusions that (1) the challenged claims could be performed "with pencil and paper," and (2) overcoming the prior art through "[o]rganizing data into hierarchies … is not a technical solution." JA27-28; PTO.Br.28-29; SAP.Br.48. But the first conclusion is contradicted by the PTAB's concession that the challenged claims are inextricably tied to computers. JA68; JA73-74. And the second conflicts with this Court's observation that the claimed methods of hierarchically organizing and processing data overcame a "highly inefficient" calculation method, "used less data than the prior art systems[,] and offered dramatic improvements in performance." *Versata*, 717 F.3d at 1258-59.

Even accounting for the discretion afforded to the agency on this *one* point by AIA § 18(d)(2), PTO.Br.27-28, the PTAB's conclusion that the challenged claims were not technological was plainly erroneous.

This petition was thus also barred by AIA § 18(d)(1), and that statutory bar deprived the PTAB of authority to issue its final written decision.

### 4. The PTAB lacked authority because SAP's § 101 challenge falls outside the scope of CBM review.

The AIA limits the scope of CBM review to certain "requirement[s] of section 112," "any requirement of section 251," and "any ground specified in part II as a condition for patentability." 35 U.S.C. §§ 282(b)(2), (3), 321(b). Section

101 is *not* "specified in part II as a condition for patentability." *Id.* Part II specifies only two sections—§§ 102 and 103—as providing "conditions for patentability." *Id.* §§ 102, 103. Under the express statutory language, therefore, § 101 falls outside the authorized scope of CBM review. *Id.* § 321(b); V.Br.29-35.

Rather than offer opposing argument based on the statutory text, PTO and SAP trot out the same cases that Versata addressed and distinguished in its opening brief. V.Br.32-33; PTO.Br.31-32; SAP.Br.50-51. The loose language in those cases does not undermine a plain-text reading of the statute in this appeal.[8] V.Br.32-33.

PTO does briefly assert that a plain-language application of § 282(b)(2) would exclude patent eligibility as "an invalidity defense in infringement litigation." PTO.Br.32. But that is not true: § 282(b)(4) covers "[a]ny other fact or act made a defense by this title," which includes patent eligibility. PTO also suggests that, if Congress intended for § 321(b) "to refer only to invalidity challenges under sections 102 or 103," it could have referenced those sections explicitly. PTO.Br.32. But § 321(b) does not capture only §§ 102 and 103—it also captures portions of §§ 112 and 251. Congress efficiently referenced this assortment of challenges in § 321(b).

---

[8] SAP also cites *Standard Oil Co. v. Am. Cyanamid Co.*, 774 F.2d 448 (Fed. Cir. 1985). SAP.Br.50. But that case—which had nothing to do with § 101—describes in dicta the "condition[s] for patentability" as involving "any one of the requirements of novelty, utility, or nonobviousness." *Standard Oil*, 774 F.2d at 453. It likewise provides no reason to ignore the controlling statutory language.

SAP argues that "Versata improperly relies on *headings*," SAP.Br.51, but §

282(b)'s text expressly covers those grounds "specified in part II" as conditions for

patentability. The "part II" headings are not "undo[ing] or limit[ing] that which the

text makes plain," SAP.Br.51; they indicate the sections that Congress "specified"

under the statute. And one need only execute a word search for "part II" and

"conditions for patentability" to find exactly which sections are so "specified." 35

U.S.C. § 282(b)(2). Because § 101 is not among them, it falls beyond the

authorized scope of CBM review.

Section 321(b) thus independently barred this petition, and the PTAB lacked

authority to issue its final written decision for this reason as well.

B.    **The PTAB Erred in Holding the Challenged Claims Patent Ineligible Under § 101.**

As Versata demonstrated, the PTAB's § 101 analysis erred in multiple

respects: its abstracted the actual claim language to analyze an alleged "core" idea;

it failed to recognize that the claims are inextricably tied with and directed to a

specific application of computer software; it ignored the claims' dispositive lack of

preemption; and it impermissibly shifted the burden of proof to Versata. V.Br.2,

14-15, 40-41. Neither PTO nor SAP meaningfully rebuts any of these points, each

of which independently requires reversal.

## 1.    No substantial evidence supports the PTAB's holding.

As an initial matter, SAP agrees that patent eligibility "under § 101 is a question of law, reviewed *de novo*." SAP.Br.15; JA1312-13; JA1322; JA40311.[9] SAP and PTO nevertheless attempt to buttress the PTAB's flawed legal analysis by suggesting that substantial evidence supports its § 101 conclusion. They assert, for example, that the PTAB "credit[ed] the testimony of [SAP's expert] over that of [Versata's expert]" in holding that the claimed steps were conventional. PTO.Br.48; SAP.Br.27. But Siegel, SAP's expert, offered only a single, conclusory, and entirely unsubstantiated *sentence* on this point. JA3264; V.Br.11. SAP also points to Appendix C of Siegel's declaration, SAP.Br.27, but Appendix C deals exclusively with the § 102 issues that SAP *abandoned*. JA3176-245; JA3264-65. SAP similarly cites (without explanation) to 20 pages of Siegel's deposition testimony, SAP.Br.27; JA36995-7014—but in that deposition Siegel conceded that he had not "stud[ied] the breakdown of this into steps and what would be significant to a person of ordinary skill," JA37009, because he had instead been "asked to look for … abstract ideas" in the claims. JA37563.

---

[9] PTO likewise does not dispute that § 101 eligibility presents a legal question, though it asserts that the PTAB's "conclusions of law may not be set aside unless arbitrary or capricious." PTO.Br.12. That makes little sense, and in fact the statute PTO cites, 5 U.S.C. § 706(2)(A), provides that agency conclusions must be set aside whenever they are "not in accordance with law."

These deficiencies may explain SAP's insistence that the PTAB "doesn't need the expert testimony at all." JA1312. In any event, Siegel's conclusory statement provides no evidence supporting the PTAB's § 101 holding. *In re Kotzab*, 217 1365, 1370 (Fed. Cir. 2000); V.Br.51.

### 2. The PTAB failed to analyze the claims as a whole.

Neither SAP nor PTO undermines Versata's demonstration that the PTAB's § 101 analysis improperly abstracted the claim language and analyzed a caricatured "core" of the invention. V.Br.41-42; JA72-77.

SAP argues that the PTAB "specifically noted its consideration of all of the claim elements 'as a whole'" in its final written decision. SAP.Br.25; JA50. But the PTAB actually said that "*Versata maintains* that each of the claims, *considered as a whole*, is directed to a specific, practical, and advantageous way to determine a product price." JA50 (emphases added). The PTAB rejected both Versata's "whole claim" conclusion and its underlying methodology.[10]

PTO appears to *defend* the caricatured-core methodology, arguing that "draftsmanship" concerns require a "two-step" approach in which the PTAB first

---

[10] Even if the PTAB had given lip service to considering the claims "as a whole," that would not change the substance of its actual analysis—which failed to consider the claims as a whole. JA72-77. Likewise, SAP and PTO suggest that the PTAB offered a few correct statements regarding § 101 principles. PTO.Br.46; SAP.Br.21. But it is not enough to offer a correct statement of the law; the PTAB was required to properly apply the law to the challenged claims. V.Br.40-51.

determines whether the claims recite an abstract idea, then evaluates whether the remaining language meaningfully limits that idea. PTO.Br.48-49. But, as the very cases PTO cites make clear, neither "draftsmanship" concerns nor this "two-step" approach license the PTAB to ignore the express claim language and focus on some imagined core of the invention. *Diamond v. Diehr*, 450 U.S. 175, 188 (1981); *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1304 (2012); V.Br.41-42. In any event, the PTAB failed to consider the actual claim language at either step of its "two-step" approach—a "mode of analysis" that PTO cannot legitimately endorse. PTO.Br.49.

### 3. The claims are directed to a specific application of computer software, not an abstract idea.

PTO and SAP cannot dispute that the challenged claims are limited to a specific capability for arranging data in specific hierarchies in a computer data source, and then retrieving and processing that data in a particular way—all to improve a computer's technological performance. V.Br.4-5. These claims are not directed to something "abstract"; that is, to something "thought of apart from concrete realities, specific objects, or actual instances." *Abstract Definition*, Dictionary.com, http://dictionary.reference.com/browse/abstract?s=t (last visited May 19, 2014). They are directed to a specific application of computer software.

a. SAP and PTO suggest that the claims' connection to a machine is limited to the recited hardware. SAP.Br.24; PTO.Br.51. This misses the critical point that

18

the claims are tied to a particular machine through the recited hardware *and* the innovative software programmed onto that hardware. These software-directed claims constitute an improvement in computer technology: a better computer process that improves computer speed and ease of maintenance.[11] V.Br.43-47; JA2898-99. These are not the "benefits of unclaimed limitations," SAP.Br.19, but those arising directly from the express claim language.[12] The challenged claims recite the structure that produces the benefits, *Versata*, 717 F.3d at 1258-59; V.Br.44n.12, and these benefits are inextricably tied to a computer.

SAP and PTO also ignore that the claimed invention is pointless outside a computer. This Court has repeatedly held such claims patent eligible under § 101. *See Research Corp. Techs. v. Microsoft Corp.*, 627 F.3d 859, 865, 869 (Fed. Cir. 2010) (upholding claims, pointless outside a computer, reciting the calculation of dots needed to create a digital image); *SiRF Tech., Inc. v. Int'l Trade Com'n*, 601 F.3d 1319, 1331-33 (Fed. Cir. 2010) (upholding claims, pointless outside a computer, directed to a computerized method for calculating the position of a GPS

---

[11] SAP suggests that because Versata addressed certain benefits using different terms in its response, JA2424, this Court is estopped from reading the claims and specification in their entirety, SAP.Br.19n.4. SAP is wrong.

[12] SAP asserts that *Genetics Inst., LLC v. Novartis Vaccines & Diagnostics, Inc.*, 655 F.3d 1291, 1307 (Fed. Cir.2011)—holding that benefits flowing from an invention are relevant when they are enabled by the claims—is inapplicable because that case deals with obviousness. SAP.Br.19n.5. But SAP provides no reason to believe different principles apply in this context. V.Br.44n.12.

receiver). The challenged claims are likewise patent eligible where—as the PTAB acknowledged, JA73—they have no purpose outside a computer. V.Br.45-46.

In any event, the recited hardware cannot be ignored, as it is "an important and useful clue" to patent eligibility. *Bilski v. Kappos*, 130 S. Ct. 3218, 3226 (2010). It is error to hold claims ineligible "merely because [they] read[] on a general purpose digital computer," as "programming creates a new machine." *Alappat*, 33 F.3d at 1544-45. Indeed, the Patent Act specifically endorses "a new use of a known … machine." 35 U.S.C. § 100(b). The attempt by SAP and PTO to minimize the challenged claims' important and inextricable link to a machine fails.

b. The attempt to minimize the invention's marketplace success also fails. Case law and common sense bear out the relevance of such success: companies would not have paid millions of dollars for an abstraction that had no practical impact on computer functionality. V.Br.51-52. Indeed, SAP asserts that its prior software determined prices using hierarchies, SAP.Br.20—so if that "idea" is all that the patented invention brought to the market, no one would have paid to add Versata's patented software to SAP's enterprise systems. *See Research Corp.*, 627 F.3d at 869 (noting that "inventions with specific applications or improvements to technologies in the marketplace" are likely patent eligible).

PTO argues that the "fact that Versata engineered and marketed a commercially successful software package does not imply that its patent claim for

the underlying *idea* is patent-eligible, any more than the commercial success of the telegraph implied that Samuel Morse's famous eighth claim was patent-eligible." PTO.Br.53. But this patent does not claim the alleged "underlying idea." Moreover, only one of Morse's eight claims was invalidated—because it *preempted* the laws of electromagnetism. *O'Reilly v. Morse*, 56 U.S. 62, 117 (1853). The other seven claims, *applying* those laws to the telegraph, were held patent eligible. *Id.* And regarding commercial success, it was the telegraph that was sufficiently concrete to be marketed—not the natural laws of electromagnetism. Just so here: the claims specify a computer process that improves computer performance, and this improvement is sufficiently concrete to be marketed. V.Br.43-44. And the claims do not *preempt* any "idea." V.Br.48-49.

c. SAP and PTO repeatedly assert that the claimed invention can be performed by pen and paper. There is no basis for this assertion: SAP's counsel did not *perform* the claims with a pen and paper, but rather *explained* them with a pen and paper.[13] JA34782-803. That is not evidence of patent ineligibility, as every patented invention must be explainable using notes and diagrams—a critical point neither SAP nor PTO rebuts. V.Br.45-46. Versata's expert actually testified that the claims could *not* be performed by pen and paper, JA37722; JA37739-41, and

---

[13] SAP's observation that a user inputs initial data, SAP.Br.22, has no bearing on this question: every piece of interactive software requires user input at some point.

SAP's expert agreed that the claims required a computer, JA37566. In any event, all agree that the claims are pointless outside a computer. JA73; *Research Corp.*, 627 F.3d at 865. The pen-and-paper argument is an unsupported red herring.

d. PTO also offers a string cite of § 101 cases, PTO.Br.50, but none invalidated claims directed to an improvement in technological function. Aside from *Flook* and *Benson*, the cited cases involved calculations with a purpose outside the technology, and claims that used a computer merely to speed the calculations. PTO.Br.50. The claims were not to an improvement in technology, but simply used technology to perform financial and other calculations that would otherwise be performed manually. *Flook* and *Benson*, on the other hand, involved claims that recited "law of nature" formulas and preempted any practical application of those formulas. *Parker v. Flook*, 437 U.S. 584, 589 (1978); *Gottschalk v. Benson*, 409 U.S. 63, 71-72 (1972); V.Br.46n.13. Because the claims at issue are to an improved technological function, do not claim a law of nature, and do not preempt any abstract idea, PTO's cases are inapplicable. V.Br.48-49.

*Research Corp.*, 627 F.3d at 869, and *SiRF Technology*, 601 F. 3d at 1331-33, by contrast, are on point. The Court distinguishes cases in which the claimed invention merely uses computers to manipulate data in a conventional manner from cases in which the claimed invention enabled improved *technological* function in "the marketplace." *Bancorp Serv. LLC v. Sun Life Assurance Co. of Canada*, 687

F. 3d 1266, 1279 (Fed. Cir. 2012). The claims at issue fall in the latter category—Versata's invention improves computer performance, and that improvement was celebrated by the market. V.Br.4-5, 27-29.

Outside this appeal, PTO agrees that claims like Versata's are patent eligible. In its brief to the Supreme Court in *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, PTO explained that "software that enables a computer to manipulate data in an innovative way would be patent-eligible." 2014 U.S. S. Ct. Briefs LEXIS 738, *49. That is precisely what the claimed invention does. V.Br.4-5, 27-29, 43-47. The claimed invention improves computer performance by "manipulat[ing] data in an innovative way." *CLS*, 2014 U.S. S. Ct. Briefs LEXIS 738, *49.

### 4. The claims do not preempt any abstract idea.

The experts agreed that the alleged abstract idea is not preempted by the claims. V.Br.11. That alone warrants reversal, as a lack of preemption is dispositive. V.Br.49. *Compare Benson*, 409 U.S. at 72 (finding patent ineligibility where a mathematical formula was preempted); *Flook*, 437 U.S. at 587 (holding that insignificant, post-solution activity does not prevent claims from preempting an abstract idea); *Mayo,* 132 S. Ct. at 1302 (expressing concern that claims cover any practical use of metabolite correlations at issue); *Bilski* 130 S. Ct. at 3231 ("Allowing petitioners to patent risk hedging would pre-empt use of this approach in all fields, and would effectively grant a monopoly over an abstract idea."), with

23

*Diehr*, 450 U.S. at 187 (finding patent eligibility where claims "do not seek to pre-empt the use of th[e] equation").

SAP admits that there are other ways to use pricing hierarchies, SAP.Br.25-26, but suggests this is not relevant to the preemption inquiry, citing *Accenture Global Servs., GmbH v. Guidewire Software, Inc.*, 728 F.3d 1336 (Fed. Cir. 2013). But *Accenture* indicates the opposite: if there are other ways to use an alleged abstract idea, then "in practical terms, it does not cover the full abstract idea itself." *Id.* at 1344-45. Versata gave multiple examples of other ways to use the alleged abstract idea, V.Br.49, and SAP has no evidence that these other ways are not meaningful. In the prior appeal, in fact, SAP argued to the contrary. JA40288.

### 5.    The PTAB wrongly shifted the burden of proof to Versata.

The PTAB expressly shifted the burden to Versata to prove that the additional limitations beyond the alleged abstract idea were "meaningful": "Versata and [its expert] fail to establish that the additional 'specific' steps that are appended to the abstract idea provide meaningful limitations." JA76; V.Br.50-51. No one disputes that this was SAP's burden, and no one disputes that shifting that burden to Versata requires reversal. But SAP and PTO attempt to sidestep this fatal flaw by speculating that the PTAB meant something other than what it said. They claim that the words "Versata … fail[ed] to establish … meaningful limitations" actually mean, in "context," that "SAP had carried its burden" to show that they

24

were meaningless. SAP.Br.26; PTO.Br.53. But no amount of "context" can transform the PTAB's words to mean their opposite. And it is improper to reconstruct the agency's articulated basis in order to affirm. *See Motor Vehicles*, 463 U.S. at 50 ("an agency's action must be upheld, if at all, on the basis articulated by the agency itself"). In any event, SAP offered no substantial evidence regarding the "conventionality"[14] of the claimed steps, *supra*, II.B.1, so the PTAB's conclusory "crediting" of SAP's expert could not carry the day even had the PTAB properly allocated the burden on this point.

### C. Alternatively, the Court Should Remand for the PTAB To Reapply § 101 Using a Proper Claim Construction.

1. PTO does not even attempt to defend the PTAB's "pricing information" construction.[15] PTO.Br.39-44. SAP briefly suggests that the doctrine of claim differentiation supports the PTAB's construction, SAP.Br.57, but fails to acknowledge that the district court found (*at SAP's urging*) that this doctrine was overcome by the patent's repeated and consistent description of "'this invention' as utilizing denormalized numbers." JA3749. A claim construction that ignores the

---

[14] Any computer program might appear to consist of "conventional" steps when considered as independent, isolated one-word caricatures (storing, retrieving, etc.) because, "[a]t its most basic, … a 'computer' is 'an automatic electronic device for performing mathematical or logical operations.'" *Bancorp*, 687 F.3d at 1277.

[15] PTO does not defend the holding, but does argue that this legal conclusion is reviewed for "reasonableness." PTO.Br.12. That is not what the Court said in *Baxter*, 678 F.3d at 1362 (reviewing PTO claim construction *de novo*).

patent's repeated and consistent description of "this invention" is flawed under the application of any standard. V.Br.57-58; JA12-17.

2. The PTAB should have followed the district court's construction. V.Br.53-54. PTO again is silent with respect to *stare decisis*. PTO.Br.39-44. SAP suggests that the PTAB "did not treat the court as a subordinate tribunal" because it applied the BRI standard. SAP.Br.57. But that simply begs the question whether the PTAB applied the correct standard. Furthermore, it makes no sense to say that PTO can avoid the *stare decisis* effect of superior rulings simply by deciding— unilaterally—to employ a different standard. If PTO can decide whether and when to treat the ruling of a superior tribunal as *stare decisis*, then PTO would appear to be the superior tribunal. But that cannot be. *Cf. Nat'l Org. of Veterans' Advocates, Inc. v. Sec'y of Veterans Affairs*, 260 F.3d 1365, 1374 n.8 (Fed. Cir. 2001) (noting that "an agency is bound to follow higher authority … when it acts as an adjudicator"); *In re Freeman*, 30 F.3d 1459, 1466-69 (Fed. Cir. 1994) (concluding that PTO was bound by a district court's prior interpretation of claims).

3. The PTAB also applied the wrong claim-construction standard. V.Br.54-57. As for BRI, Versata (and its amici) have established why the *Phillips* standard is appropriate here. V.Br.54-57; 3M.Br. But suffice it to say that every opposing argument rests on the assumption that there is no important distinction between the new CBM review and the older examinational proceedings. PTO.Br.39-45;

SAP.Br.54-56. That assumption is flawed: unlike the older proceedings, the new review proceedings are adjudicatory trials between two parties. *Supra*, II.A.2. Unlike the older proceedings, the new reviews are intended to be cost-effective alternatives to litigation. *Id.* This systemic difference requires a corresponding shift in approach. *Cf. Nat'l Org. of Veterans' Advocates*, 260 F.3d at 1374 n.8 ("an agency is bound to follow higher authority … when it acts as an adjudicator").

3. If the Court finds the PTAB's claim-construction analysis flawed in any respect, then, at a minimum, the Court should remand for a correct § 101 analysis using the proper standard and construction. *See In re Abbott Diabetes Care, Inc.*, 696 F.3d 1142, 1150 (Fed. Cir. 2012) (vacating patentability determination and "remand[ing] for the Board to apply the correct claim construction"); *INS v. Ventura*, 537 U.S. 12, 16 (2002) (per curiam) ("Generally speaking, a court of appeals should remand a case to an agency for decision of a matter that statutes place primarily in agency hands.").

SAP argues that the Court should not reach the claim-construction issue because it is not clear how a different construction of "pricing information" would "affect the substantive controversy." SAP.Br.53. But according to SAP's own authority, the proper remedy in such a circumstance is to remand for additional consideration. *Jang v. Bos. Scientific Corp.*, 532 F.3d 1330, 1335-36 (Fed. Cir. 2008). To the extent that SAP is right, therefore, remand would be appropriate.

SAP also points to the PTAB's conclusory observation that, even if the claims required "denormalized numbers …, such calculations may also be performed on the general purpose computer, or even by a person." JA31-32; SAP.Br.53. But that (entirely unsupported) statement is plucked from the PTAB's *preliminary* analysis under § 324(a). JA31-32. That analysis was "washed clean" during the proceeding, *Hiniker*, 150 F.3d at 1367, and the PTAB abandoned this position after trial. While the final written decision contains a similar comment regarding the construction of "data source," JA68 ("even if we are incorrect, it would not alter our § 101 analysis"), it conspicuously omits such a qualifier for the construction of "pricing information," JA67. In any event, SAP's authority holds that any "ambiguity" regarding the impact of a claim construction makes remand appropriate. *Jang*, 532 F.3d at 1335-36.

## II. CONCLUSION

The Court should reverse the PTAB's final written decision, holding that: 1) the PTAB lacked authority to adjudicate SAP's petition; or 2) the claims of the '350 patent recite patent-eligible subject matter. Alternatively, the Court should reverse and remand for a new § 101 analysis under a proper claim construction.

Date: May 19, 2014                    Respectfully submitted,


                                      /s/ Mike McKool, Jr.

                                      Mike McKool, Jr.
                                      *Principal Counsel*
                                      Daniel L. Geyser
                                      McKOOL SMITH, P.C.
                                      300 Crescent Court, Suite 1500
                                      Dallas, TX 75201
                                      (214) 978-4000

                                      Scott L. Cole
                                      Joel L. Thollander
                                      Steven J. Pollinger
                                      McKOOL SMITH, P.C.
                                      300 W. 6th Street, Suite 1700
                                      Austin, Texas  78701
                                      (512) 692-8700

                                      Nancy J. Linck
                                      Martin M. Zoltick
                                      ROTHWELL FIGG ERNST &
                                      MANBECK PC
                                      607 14th Street, NW, Suite 800
                                      Washington, DC 20005
                                      (202) 783-6040

                                      *Attorneys for Appellant Versata*
                                      *Development Group, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on May 19, 2014 an electronic copy of the foregoing REPLY BRIEF OF APPELLANT VERSATA DEVELOPMENT GROUP, INC. was filed with the Clerk of the Court for the U.S. Court of Appeals for the Federal Circuit, using the appellate CM/ECF system. I further certify that all parties in the case are represented by lead counsel who are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.


Date: May 19, 2014


/s/ Joel L. Thollander

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing REPLY BRIEF OF APPELLANT VERSATA DEVELOPMENT GROUP, INC.:

1.    complies with the type-volume limitation of FED. R. APP. P. 32(a)(7)(B). This brief contains 6,936 words, excluding the parts of the brief exempted by FED. R. APP. P. 32(a)(7)(B)(iii) and FED. CIR. R. 32(b). Microsoft Word 2010 was used to calculate the word count.

2.    complies with the typeface requirements of FED. R. APP. P. 32(a)(5) and the type style requirements of FED. R. APP. P. 32(a)(6). This brief has been prepared in a proportionally-spaced typeface using Microsoft Word 2010 in 14-point Times New Roman type style.

Date: May 19, 2014

/s/ Joel L. Thollander